On October 5, 1994, the State Employment Relations Board ("SERB") conducted a representation election for certain employees of appellant, the Paulding County Board of Mental Retardation and Developmental Disabilities ("appellant"). The relevant employee organization, or union, in this election was appellee, the Ohio Association of Public School Employees ("OAPSE").
The election involved both professional and nonprofessional employees and, therefore, both a unit-determination question, pursuant to R.C. 4117.06(D)(1), and a representation question, pursuant to R.C. 4117.07(C), were on a single ballot.
The professional employees voted four to zero in favor of inclusion in a combined unit of professional and nonprofessional employees. The nonprofessional employees cast eight votes in favor of inclusion with professional employees and five votes against inclusion, with three nonprofessional ballots being challenged during the election. These three votes were sufficient in number to potentially affect the results of the unit determination question. SERB's agent placed the ballots in a sealed envelope and returned to his office with the ballots. The parties and witnesses did not sign the seal on the envelope.
Appellant filed objections to the election questioning the security of the procedures used to secure the challenged votes. On December 12, 1994, SERB resolved issues as to both the determinative challenged ballots and appellant's objections. SERB found that two of the three challenged nonprofessional votes were cast by ineligible voters and that the third challenged vote need not be opened because it was no longer determinative. SERB directed the issuance of a revised tally of ballots reflecting that the professional employees would be included in the unit. SERB dismissed appellant's objections without prejudice for lack of supporting data as required by Ohio Adm. Code 4117-5-10(A), and as premature since the tally was not yet complete.
On January 6, 1995, the ballots were tallied concerning the representation question. The tally reflected that of the eighteen votes cast, one ballot was challenged, five votes were for no representative, and twelve votes for OAPSE. Appellant again objected to the election based upon the security procedures.
On February 23, 1995, SERB certified the election results and certified OAPSE as the exclusive representative of all the employees in that unit. On March 22, 1995, appellant appealed SERB's certification to the Franklin County Court of Common Pleas. On September 27, 1995, the common pleas court affirmed SERB's decision. This decision was journalized on November 30, 1995. Appellant has appealed that decision and raises the following assignment of error: *Page 548 
"The court below erred when it held that the certification order of the State Employment Relations Board, which approved the relevant election result and denied the employer's objections to the same, was supported by reliable, probative, and substantial evidence and in accordance with law."
In an appeal involving an administrative decision, pursuant to R.C. 119.12, the standard of review for appellate courts is whether the common pleas court abused its discretion in finding the administrative order was or was not supported by reliable, probative and substantial evidence. The appellate court does not determine the weight to be given to the evidence. RossfordExempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.
(1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, 1241. When the issue is a question of law, this court makes its own determination of the law to be applied to the facts found by the agency. Franklin Cty. Bd. of Commrs. v. State Emp. RelationsBd. (1993), 92 Ohio App.3d 585, 588, 636 N.E.2d 407, 409.
Appellant contends that the common pleas court erred in finding that the SERB certification order certifying the election results and denying appellant's objections was supported by reliable, probative and substantial evidence.
After the January tabulation, appellant filed four objections to the election. The first objection was that the SERB agent made no attempt to maintain the integrity of the uncounted ballots because he did not tally the ballots concerning the representation question. The second objection was that the SERB agent placed the uncounted ballots in an envelope but did not permit the parties or witnesses to sign the seal of the envelope, contrary to SERB procedure as published in SERB's procedural manual, Section 40. The third objection was that the uncounted ballots were kept in an administrative assistant's office from election time until the ballots were tallied in January. The fourth objection was that prior to the tally of the ballots, an article in a union newsletter of the Northwestern Ohio Building and Construction Trade Council was published which stated that the employees voted for the union by an overwhelming majority. Appellant argued that this indicates that OAPSE had access to the ballots and/or tampered with the ballots.
SERB investigated the objections pursuant to Ohio Adm. Code Rule 4117-5-10(B). SERB denied the objections because appellant failed to specifically allege that tampering had occurred with any of the ballots. SERB found appellant's contention that OAPSE had access to the ballots to be unsupported. In the certification order SERB stated:
"* * * Any reasonably attentive person present at the tally of ballots could have looked to see how the representation question (which appears on the bottom half of the ballot) was marked as the unit-determination question (which appears *Page 549 
at the top half of the ballot) was tallied. The Employee Organization [OAPSE], in its response to the objections, points out other indicia the Employee Organization [OAPSE] might use to predict the outcome of the election, such as employee participation in the organizing effort, the willingness of employees to sign membership cards, and the outcome of the unit-determination election. * * *"
Also, SERB found that the policy manual was not violated because the section in question was inapplicable to this election. The section of the policy manual is titled "Ballot Boxes," and states:
"The ballot box should be inspected by the SERB official in the presence of the observers immediately before the voting starts to see that the ballot box is empty. At the close of a multi-site election, the ballot box must be sealed by the SERB official in the presence of observers and signatured by the observers. The boxes will then be brought to the centralized tally location." SERB Policy Manual, Section 40.
SERB found this section to be inapplicable to this election because it applies only to multisite elections, which this election was not. SERB also found that there is no SERB policy manual provision that specifically addresses these circumstances.
The final reason SERB denied the objections is that the SERB agent who conducted the election submitted a "memorandum to file" regarding his recollection of the tally. The agent stated that he had conducted a quick review of the ballots and determined:
"[T]hose voters voting for inclusion also voted for OAPSE. Likewise, those voting for non-inclusion voted for no representative. * * *"
His recollection corresponds to the actual tally results.
SERB concluded that the failure to maintain the ballots under a signed seal, in the absence of any indication of tampering, did not constitute sufficient reason to set aside the election. Based upon the SERB agent's recollection and the actual tally results, SERB concluded that the ballots were not altered.
Appellant has not alleged that tampering occurred but, rather, that the security measures taken were insufficient to prevent the possibility of tampering. The burden of setting aside an election is a heavy one and falls upon the party attacking it, in this case, appellant. Polymers, Inc. v. Natl.Labor Relations Bd. (C.A.2, 1969), 414 F.2d 999, 1004.[1] Each possibility of tampering must be assessed upon its own unique facts and circumstances. Id. In Polymers, the National Labor Relations Board and the court found the remote possibility of *Page 550 
tampering insufficient to invalidate an election. Just as inPolymers, in this case, the possibility of tampering is remote. The ballots were in a sealed envelope and were taken by SERB's agent to his office where the envelope was kept in the desk of an administrative assistant. There is not even the slightest suggestion that anyone had access to the envelope. Appellant failed to allege that actual tampering had occurred. Further, the SERB agent who conducted the election reviewed the votes and his recollection corresponds to the election results.
SERB also determined that the article in the union newsletter was not evidence that tampering had occurred. Both questions to be decided in the election were contained on one ballot, so when the ballots were tallied for purposes of the unit determination question, the bottom half of the ballot containing the representation issue would have been visible. OAPSE also provided a reasonable explanation for determining how employees would vote, including employee participation in the organizing effort, the willingness of employees to sign membership cards, and the outcome of the unit-determination election. Thus, the article in the union newsletter itself is not evidence of actual tampering.
SERB determined that Section 40 of the policy manual was inapplicable as this was not a multisite election. The common pleas court determined that SERB's conclusions concerning regulations are entitled to some deference and that the conclusions were in accordance with law. Administrative resolution of evidentiary conflicts are entitled to due deference by the common pleas court. Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267.
Appellant also contends that SERB should at least have granted an evidentiary hearing to investigate appellant's objections. SERB investigated the objections pursuant to Ohio Adm. Code 4117-5-10.[2] SERB is not required to conduct an evidentiary hearing. An investigation, pursuant to Ohio Adm. Code4117-5-10, is all that is required. Franklin Cty. Bd. of Commrs.v. State Emp. Relations Bd., supra, 92 Ohio App.3d at 589,636 N.E.2d at 410, citing Hocking Technical College v. State Emp.Relations Bd. (1990), 70 Ohio App.3d 18, 25, 590 N.E.2d 370,374. *Page 551 
The common pleas court did not abuse its discretion in finding that the SERB certification order was supported by reliable, probative and substantial evidence, and appellant's assignment of error is not well taken.
For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE, P.J., and LAZARUS, J., concur.
[1] Ohio law in this area is similar to federal law.
[2] "If post-election objections are filed or if challenged ballots are sufficient in number to affect the results of the election, the board shall investigate such objections or challenges. Position statements on challenged ballots must be filed within ten days of the service of the tally of ballots. The board shall issue a directive resolving relevant issues based upon the investigation; provided, however, that disputed issues of material fact may be determined upon an evidential hearing. The board may dismiss the post-election objections or challenges, direct the counting of some or all of the challenged ballots, or where warranted, set aside the previous election and direct another election. * * *"